******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* BRIAN W. JORDAN
(AC 37654)

Lavine, Beach and Pellegrino, Js.

*Argued February 3—officially released June 7, 2016*

(Appeal from Superior Court, judicial district of New Haven, geographical area number seven, Scarpellino, J. [applications for accelerated rehabilitation, supervised diversionary program for veterans]; S. Moore, J. [motion to preclude, judgment].)

*Kevin M. Smith*, for the appellant (defendant).

*Toni M. Smith-Rosario*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, *James Turcotte*, supervisory assistant state's attorney, and *James Dinnan* and *John C. Lion*, senior assistant state's attorneys, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Brian W. Jordan, appeals from the trial court's judgment of conviction, rendered after a jury trial, of assault in the second degree with a dangerous instrument in violation of General Statutes § 53a-60 (a) (2). On appeal, the defendant claims that the trial court erred (1) in denying his application for accelerated rehabilitation, (2) in denying his application for the supervised diversionary program for veterans, and (3) in granting the state's motion in limine to preclude evidence of the victim's violent character. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 20, 2011, the defendant and his friend, David Gorski, arrived at Jake's Martini Bar (bar) in Wallingford. The victim, Erdan Sejdic, and his girlfriend, Brianna White, were also at the bar celebrating the victim's birthday. After drinking at the bar for more than one hour, both the defendant and Gorski were intoxicated. The victim and White were sitting at a table in the front of the bar. The victim left the table to order drinks at the service bar. While the victim was at the bar, the defendant sat at the victim's table, across from White, and began chatting with her.

After noticing that White seemed to be uncomfortable with the defendant sitting at the table, the victim approached the table. He was stopped by Gorski, who asked him if White was his girlfriend and assured the victim that he would "take care of my friend." The victim returned to the service bar, only to see that the defendant had not moved and White continued to look uncomfortable. The victim returned to the table a second time and introduced himself to the defendant and assured the defendant that he did not "want any trouble." The victim asked Gorski, with regard to the defendant, "can you just let him know he seems a bit belligerent?" The victim then walked back to the service bar and believed that Gorski would persuade the defendant to move. When the defendant still had not moved, the victim walked back to the table a third time. The victim stood in front of the defendant, told him that he did not want any trouble, and asked the defendant to move.

The defendant then struck the victim on the side of the head with a glass object. The victim was knocked back by the impact. When he realized that he was bleeding profusely, the victim removed his shirt and wrapped it around his head. The altercation between the defendant and the victim continued outside of the bar. After the police arrived and statements were taken, the victim and White drove to a hospital emergency room. He was diagnosed with a contusion and lacerations on the left temporal area of his face. During a pretrial hearing, the victim elaborated on the lasting effects of the assault,

including a change in personality, facial scars, acute post-traumatic stress disorder, persistent anxiety, and nerve pain.

The defendant was arrested and charged with assault in the third degree in violation of General Statutes § 53a-61. The state later filed a substitute information charging the defendant with assault in the second degree with a dangerous instrument in violation of § 53a-60 (a) (2). The defendant applied for both the accelerated rehabilitation program and the supervised diversionary program for veterans; the trial court, *Scarpellino, J.*, denied both applications. During trial, the defendant alleged an affirmative defense of self-defense and that the victim was the initial aggressor. On October 6, 2014, following the presentation of evidence, the jury found the defendant guilty of assault in the second degree with a dangerous instrument. The court, *Moore, J.*, sentenced the defendant to three years incarceration, execution suspended after ninety days, followed by three years of probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court, *Scarpellino, J.*, abused its discretion in denying his application for accelerated rehabilitation. The defendant argues that the court failed to give due consideration to the evidence regarding the commission of the offense and neglected to make the necessary findings. Thus, according to the defendant, the court abused its discretion. We do not agree.

The record reveals the following relevant facts. On October 3, 2012, the defendant applied for accelerated rehabilitation. See General Statutes (Supp. 2012) § 54-56e, as amended by Public Acts 2012, No. 12-42, § 2.[1] On October 31, 2012, the court held a hearing on the application. While acknowledging that the defendant was eligible for accelerated rehabilitation, the state opposed granting it under the totality of the circumstances. The state cited the defendant's unprovoked attack and the fact that the victim needed twenty stitches to close the wound and suffered ongoing medical issues as a result of the attack. The victim also opposed granting the defendant accelerated rehabilitation due to the seriousness of the unprovoked attack, the ongoing physical, psychological, and emotional repercussions he suffered, and the defendant's failure to accept responsibility for his action or demonstrate remorse. Defense counsel argued that the offense was not too serious for accelerated rehabilitation, and that the defendant was not going to reoffend. Further, counsel noted that several of the defendant's treatment providers indicated that a subarachnoid hemorrhage that he suffered during his military service and his post-traumatic stress disorder likely contributed to the incident. Both the defendant and a defense witness, Clifton

Roberts, addressed the court. The defendant expressed remorse and called the incident a "horrible mistake." Roberts, a mitigation specialist, testified that the defendant suffered from post-traumatic stress disorder and had been treated by a counselor, Phyllis Pavlik, for years for his condition. Roberts also noted letters that were submitted on the defendant's behalf in support of his application, which indicated that his behavior on the night in question was "in aberration of his true character." The court denied the accelerated rehabilitation application, noting the unprovoked situation and the injuries the victim sustained as the basis for denying the application.

"The granting or denial of an application for accelerated rehabilitation implicates the exercise of discretion by the trial court. . . . The exercise of legal discretion imparts something more than the granting to the trial court of the right to have leeway in decision making. . . . Rather, the exercise of legal discretion requires that it be exercised in conformity with the spirit of the law and in a manner to subserve and not impede or defeat the ends of substantial justice. . . . Our review of the trial court's exercise of its discretion is limited to the questions of whether the court correctly applied the law and whether it could reasonably conclude as it did. . . . It is only where an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion. . . . Every reasonable presumption will be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Rios*, 110 Conn. App. 442, 447–48, 954 A.2d 901 (2008).

We disagree with the defendant's assertion that the court failed to give due consideration to all of the evidence presented. Both the state and the victim objected to the defendant's application, and the victim alleged that he suffered serious injuries as a result of the altercation. The court specifically stated that it had read the defendant's submissions and expressed its willingness to consider any witness testimony that the defendant believed would be helpful. The court expressly noted that it was to "look at the incident itself" in making a determination about accelerated rehabilitation. The court also noted that the assault was an "unprovoked situation" and that injury resulted from the altercation. The court did not simply look only at the offense with which the defendant was charged in making its determination about accelerated rehabilitation. Rather, the court also reviewed the allegations in the court file, read the defendant's submissions, and heard testimony from the defendant's witness. The court fully considered all aspects of the incident, and there is nothing to indicate the court abused its discretion in denying the defendant's application for accelerated rehabilitation.

The defendant further argues that the court did not

make express necessary findings regarding the seriousness of the offense and the likelihood of the defendant reoffending when it denied his application for accelerated rehabilitation. In denying accelerated rehabilitation, the court discussed the particular offense in depth and made note of the unprovoked attack and the serious injuries sustained by the victim when deciding that this case "falls outside accelerated rehabilitation." Thus, "the fact that the trial court did not utter the talismanic words . . . does not indicate that the court did not make such a determination." *State* v. *Robinson*, 227 Conn. 711, 731, 631 A.2d 288 (1993). We conclude that the court did not abuse its discretion in denying the defendant's application for accelerated rehabilitation.

II

The defendant next claims that the court, *Scarpellino, J.*, erred in denying his application for the supervised diversionary program for veterans. The defendant argues that the court did not consider the treatment plan presented by the Court Support Services Division of the Judicial Branch and other relevant evidence that he submitted. We disagree.

The record reveals the following facts. On March 19, 2013, the court held a hearing on the defendant's application for the supervised diversionary program for veterans. See General Statutes § 54-56*l*.[2] At the outset, the court noted that the supervised diversionary program mirrors the accelerated rehabilitation program with respect to eligibility. Thus, the court was most interested in hearing the parties address the issue of the seriousness of the offense. Defense counsel referred to some of the materials he submitted, including letters of support from various professionals and the degree to which the defendant regularly attended 12-step meetings. In addressing the seriousness of the offense, defense counsel argued that the case "may be right on the line" but was "not such an outlier that it should not be granted . . . ." The defendant also addressed the court and noted his efforts to maintain sobriety. He also noted that his treatment counselor had advised him that, due to his post-traumatic stress disorder, he would have perceived the situation to be threatening. The state objected to the granting of the application due to the seriousness of the offense and the defendant's likelihood of reoffending. The state pointed to the defendant's one-sided aggression, the unprovoked attack, and his failure to accept responsibility for his actions. The victim and his mother also addressed the court to object to the granting of the defendant's application. The court then noted that it had read everything submitted to it on behalf of the defendant, but denied the application because the offense was too serious in nature.

Although this court has never addressed the standard of review for the decision to grant or deny an application

to the supervised diversionary program, the program mirrors the accelerated rehabilitation program, and, thus, we review it under the same abuse of discretion standard discussed in part I of this opinion.

The defendant argues that the court neglected to consider the treatment plan because it never mentioned the treatment plan or any other medical documents provided by the defendant. However, the court expressly stated that it had reviewed at length the defendant's submissions, which included the treatment plan. Further, § 54-56*l* (a) clearly states that in order for the supervised diversionary program to be granted, the crime of which the defendant is accused must not be of a serious nature. The court found the defendant's crime to be of a serious nature, both at this hearing and at the hearing on the defendant's application for accelerated rehabilitation, which made the defendant ineligible for the program. Thus, the court denied the application. Accordingly, we conclude that the court did not abuse its discretion in denying the defendant's application for the supervised diversionary program for veterans.

### III

The defendant's final claim is that the court abused its discretion by granting the state's motion in limine to preclude evidence of the victim's history of violent behavior. The defendant argues that evidence of the victim's violent character and status as the initial aggressor in light of his claim of self-defense should not have been precluded. We agree with the defendant that the exclusion of the evidence was improper, but conclude that the error was harmless.

The record reveals the following facts. On September 29, 2014, the state filed a motion in limine to preclude the defendant from presenting evidence of the victim's two misdemeanor convictions. The state argued that the convictions were dissimilar in nature to the alleged aggression in this case, and the incidents giving rise to the convictions occurred subsequent to the incident in this case. In 2012, the victim was convicted of assault in the third degree, unlawful restraint in the second degree, and criminal trespass in the first degree. The underlying facts were that the victim broke into White's home and attacked her when he suspected her of keeping company with another man. The victim also was convicted in 2013 for breach of peace in the second degree and violation of probation. He had become enraged because White went to a bar for a period of time without him. On September 30, 2014, Judge Moore heard argument on the state's motion in limine. The state argued that although the incidents that led to the victim's convictions involved violence, they were not admissible because they were dissimilar to the charged offense in that they involved domestic disputes between the victim and White, and the events occurred subse-

quent to the 2011 incident in this case. Defense counsel argued that the two incidents were similar to the charged offence in that the victim became "aggressive, confrontational and violent with regard to Brianna White." The court granted the state's motion and concluded that the evidence would be more prejudicial than probative because the victim's conduct occurred after the incident in this case and because his conduct was dissimilar in nature in that both bad acts involved aggression between him and White, a domestic partner, and occurred in a private setting.

"The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Dehaney*, 261 Conn. 336, 354–55, 803 A.2d 267 (2002), cert. denied, 537 U.S. 1217, 123 S. Ct. 1318, 154 L. Ed. 2d 1070 (2003).

"Ordinarily, upon a showing of a proper foundation for a claim of self-defense, the defendant may introduce evidence of the violent character of the victim. . . . A victim's violent character may be proven by reputation or opinion evidence or by showing convictions for crimes of violence." (Citations omitted; internal quotation marks omitted.) *State* v. *Webley*, 17 Conn. App. 200, 206, 551 A.2d 428 (1988); see also Conn. Code Evid. § 4-4 (b) ("[i]n cases in which the accused in a homicide or criminal assault case may introduce evidence of the violent character of the victim, the victim's character may also be proved by evidence of the victim's conviction of a crime of violence"). "In assessing the probative value of the evidence of certain convictions the court looks at the underlying facts and circumstances of the crime in order to determine whether the victim's convictions are too remote in time or lacking elements of violence. [E]videntiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Citation omitted; internal quotation marks omitted.) *State* v. *Byrd*, 136 Conn. App. 391, 397, 44 A.3d 897, cert. denied, 306 Conn. 906, 52 A.3d 732 (2012).

In the present case, the defendant argued at trial that the victim was the initial aggressor because he was unhappy about the defendant sitting at the table with White. The facts underlying the victim's convictions demonstrate the victim's possessiveness of White and his willingness to act on his possessiveness. Both con-

victions occurred after the victim became suspicious of White and another man, and the victim acted violently as a result. These convictions were probative of the defendant's argument that the victim was the initial aggressor because he approached the defendant while the defendant was sitting with White. We agree with the defendant's argument that even though these convictions occurred subsequent to the incident here, they were admissible because they were similar to the charged offense. We agree that the trial court abused its discretion in granting the motion in limine and precluding this evidence.

We conclude, however, that the error was harmless. "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [W]hether [an improper ruling] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case . . . the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points . . . and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the . . . evidence on the trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Eleck*, 314 Conn. 123, 129, 100 A.3d 817 (2014).

Here, the defendant has failed to persuade us that the exclusion of the evidence substantially affected the verdict. Our review of the record demonstrates that there was ample evidence before the jury that the defendant was the initial aggressor when he struck the victim. Every eyewitness who testified stated that the assault was unprovoked. Introducing evidence that the victim was involved in two subsequent acts of aggression toward a domestic partner would not have substantially affected the verdict and prejudiced the defendant. We conclude that there was no harm.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] At the time the defendant applied for accelerated rehabilitation, General Statutes (Supp. 2012) § 54-56e, as amended by Public Acts 2012, No. 12-42, § 2, provided in relevant part: "(a) There shall be a pretrial program for accelerated rehabilitation of persons accused of a crime or crimes or a motor vehicle violation or violations for which a sentence to a term of imprisonment may be imposed, in which crimes or violations are not of a serious nature. (b) The court may, in its discretion, invoke such program on motion of the defendant or on motion of a state's attorney or prosecuting attorney with respect to a defendant (1) who, the court believes, will probably not offend in the future, (2) who has no previous record of conviction of a crime or of a violation of section 14-196, subsection (c) of section 14-

215, section 14-222a, subsection (a) of section 14-224 or section 14-227a, and (3) who states under oath, in open court or before any person designated by the clerk and duly authorized to administer oaths, under the penalties of perjury, that the defendant has never had such program invoked in the defendant's behalf or, with respect to a defendant who is a veteran, that the defendant has not had such program invoked in the defendant's behalf more than once previously, provided the defendant shall agree thereto and provided notice has been given by the defendant, on a form approved by rule of court, to the victim or victims of such crime or motor vehicle violation, if any, by registered or certified mail and such victim or victims have an opportunity to be heard thereon. . . ."

[2] General Statutes § 54-56*l* provides in relevant part: "(a) There shall be a supervised diversionary program for persons with psychiatric disabilities, or persons who are veterans, who are accused of a crime or crimes or a motor vehicle violation or violations for which a sentence to a term of imprisonment may be imposed, which crimes or violations are not of a serious nature. For the purposes of this section . . . (2) 'veteran' means a person who is found, pursuant to subsection (d) of this section, to have a mental health condition that is amenable to treatment, and who was discharged or released under conditions other than dishonorable from active service in the armed forces as defined in section 27-103. . . ."

---------------------------------