McDONALD, J.
**274 *3 The primary question we must answer in this certified appeal is whether a criminal defendant claiming self-defense is barred as a matter of law from introducing the victim's convictions for crimes of violence as evidence that the victim initiated the confrontation with the defendant when the conduct giving rise to the victim's convictions occurred subsequent to the charged incident. The defendant, Brian W. Jordan, appeals from the judgment of the Appellate Court, which affirmed his judgment of conviction of assault in the second degree. State v. Jordan , 166 Conn. App. 35, 48, 140 A.3d 421 (2016). We agree with the Appellate Court that, although the trial court improperly determined that such evidence is inadmissible as a matter of law, the defendant has failed to prove that such error ultimately was harmful.
**275 The jury reasonably could have found the following facts. On the evening of August 19, 2011, the defendant was socializing with a neighbor, David Gorski. After consuming several beers at the defendant's residence, they went to Jake's Martini Bar in Wallingford (Jake's). Once there, they ordered drinks from the bar, which was located in the front room, and then went into a separate room in the rear of the establishment to listen to a band.
While the defendant and Gorski were in the back room, the victim, Erdan Sejdic, and his then girlfriend, Brianna White, arrived at Jake's, where they intended to enjoy a nightcap in celebration of the victim's birthday. After they ordered drinks from the bar, they sat down at a high top table with two chairs a few feet away from the bar. A short time later, the victim returned to the bar to order a second round of drinks while White remained seated at the table.
While the victim was at the bar, the defendant and Gorski reentered the front room. They noticed White sitting alone and approached her. The defendant sat down in the chair that the victim had recently vacated while Gorski stood nearby. The defendant attempted to strike up a conversation with White. White interpreted the defendant's conduct as unsolicited flirtation, and told him that she was at the bar with someone.
During this exchange, the victim looked up from the bar and saw the defendant speaking with White. White made eye contact with the victim and made a facial expression she intended to convey, and the victim understood to mean, that she wanted him to intervene. The victim began to walk toward the table but, before he could reach it, Gorski intervened, having surmised from the victim's close proximity to White that he might be her date. Gorski asked the victim if White was his girlfriend, which the victim confirmed. Gorski told the **276 victim that he would take care of his friend. The victim returned to the bar to wait for his drinks while Gorski returned to the table. Gorski told the defendant that White was the victim's girlfriend and that they should go somewhere else. The defendant snickered, stayed in his seat, and continued speaking to White.
Observing that White was still distressed, the victim approached the table, standing in front of his former seat where the defendant was seated. He calmly introduced himself to the defendant and told the defendant that he and White were at *4 the bar to celebrate his birthday and that White was his girlfriend. He further expressed that he did not want any trouble. The defendant did not respond, but Gorski stated that he would take care of it. Believing that Gorski would get the defendant to leave the table, the victim again returned to the bar to wait for his drinks.
Moments later, when the defendant still had not left the table, the victim returned to the table and stood in front of where the defendant was seated. He reiterated that he was out with White to celebrate and did not want any trouble, and told the defendant that he was in his seat and that he should move. The victim and White then heard the defendant state, "I'm going to hit him." White saw the defendant get red in the face and stand up. Simultaneously, Gorski put his arm across the victim, which prompted the victim to turn toward Gorski. While the victim was looking away from the defendant, the defendant smashed a glass[1] across the victim's head. The victim's head started bleeding profusely, the gash later requiring twenty stitches to close. The bartender, John Heffernan, who was behind the bar and saw the defendant strike the victim, promptly escorted the defendant out of the establishment.
**277 A crowd of people, including White, followed the defendant out of Jake's. The crowd continued to follow the defendant around the corner toward a parking lot in the rear of the building, yelling at him. After using his shirt to stanch the bleeding, the victim heard White yelling outside and left Jake's to find her. The victim noticed the crowd around the corner of the building and went toward it. The victim saw the defendant backing away from the crowd and ran up to him to stop him from leaving before the police arrived. As soon as he approached the defendant, the defendant threw a punch at the victim, which the victim dodged. The victim then punched the defendant in the forehead, causing the defendant to fall to the ground. While the defendant was still on the ground, the victim kicked him twice. The crowd then began kicking the defendant, which prompted the victim to back away. Almost immediately thereafter, the police arrived and took statements from the defendant and the victim. An angry exchange ensued between the two, in which the victim yelled profanities at the defendant.[2]
The defendant was arrested at the scene.[3] In a substitute long form information, the defendant was charged with assault in the second degree, by means of a dangerous instrument, in violation of General Statutes (Rev. to 2011) § 53a-60 (a) (2).
Prior to trial, the state filed a motion in limine requesting, inter alia, that the trial court preclude evidence of the victim's criminal convictions, which the state anticipated the defendant would attempt to submit in support of his claim of self-defense. The state asserted that the defendant would not be able to lay an **278 adequate foundation of self-defense. It further asserted that the convictions were inadmissible because they occurred subsequent to the 2011 charged conduct, in June, 2012, and March, 2013, and that the convictions *5 were not sufficiently similar to the charged conduct in that they were domestic in nature. The defendant argued that evidence of the subsequent convictions should be admitted, citing the similarity in motive for the conduct, namely, jealousy of White and other men. The trial court granted the state's motion in limine. The court concluded that, even if the defendant were to lay an adequate foundation of self-defense, evidence of the convictions would not be admissible as a matter of law because they occurred subsequent to the charged conduct. It also found they were not sufficiently similar to the charged conduct in any event.
In a trial to the jury, the defendant pursued a theory of self-defense premised exclusively on his own testimony. In that testimony, he offered the following alternative version of the incident. When the victim asked the defendant to move the final time, his tone was stern and he showed signs of anger, including rocking back and forth, his face turning red, and a vein bulging in his head. The defendant then saw the victim begin to lunge at him. Because the defendant was seated and the only route of escape was blocked by the victim, he was neither able to step away or shove the victim out of the way. To startle the victim and give the defendant an opportunity to escape, the defendant swung a glass at the victim's chest. The glass struck the victim's head instead of his chest because the victim bent forward while lunging at the defendant. The defendant was unable to offer any other witness to corroborate that the victim was angry or physically aggressive prior to the defendant's striking the victim with the glass.
The jury rejected the claim of self-defense, finding the defendant guilty of the crime charged. The court **279 rendered judgment in accordance with the verdict, from which the defendant appealed, challenging among other things, the exclusion of the victim's convictions.
The Appellate Court affirmed the defendant's judgment of conviction. It concluded that the trial court had abused its discretion by excluding evidence of the victim's subsequent convictions but that the error was harmless. State v. Jordan , supra, 166 Conn. App. at 46-48, 140 A.3d 421. We granted the defendant's petition for certification to appeal, limited to the following issues: (1) whether the Appellate Court properly concluded that the trial court had abused its discretion in excluding the victim's subsequent domestic violence convictions as evidence that he was the initial aggressor during the defendant's bar-room assault; and (2) whether the Appellate Court properly concluded that preclusion of the initial aggressor evidence was harmless error.[4] State v. Jordan , 323 Conn. 920, 150 A.3d 1150 (2016). We answer both questions in the affirmative.
I
"Section 4-4 (a) (2) [of the Connecticut Code of Evidence] permits the accused in a homicide or criminal assault case to introduce evidence of the victim's violent character, after laying the foundation for a claim of self-defense, in order to prove that the victim was the aggressor.[5]
*6 Subsection (b) of § 4-4 provides that proof **280 of the victim's violent character may be made through reputation or opinion testimony or by evidence of the victim's conviction of a violent crime." (Footnotes added and omitted.) State v. Whitford , 260 Conn. 610, 638, 799 A.2d 1034 (2002). Such evidence is admissible to prove the victim's character for violence "irrespective of whether the accused knew of the [victim's] violent character or of the particular evidence adduced at the time of the ... encounter." State v. Miranda , 176 Conn. 107, 114, 405 A.2d 622 (1978) ; see also State v. Carter , 228 Conn. 412, 422-23, 636 A.2d 821 (1994). Nonetheless, "the accused is not permitted to introduce the [victim's] entire criminal record into evidence in an effort to disparage his general character; only specific convictions for violent acts are admissible .... Nor is the accused authorized to introduce any and all convictions for crimes involving violence, no matter how petty, how remote in time, or how dissimilar in their nature to the facts of the alleged aggression. In each case the probative value of the evidence of certain convictions rests in the sound discretion of the trial court." (Citation omitted.) State v. Miranda , supra, at 114, 405 A.2d 622.
In accordance with these principles, it is well established that evidence of the criminal convictions of a victim that predate the incident are admissible if they meet the aforementioned conditions. See State v. Abdalaziz , 248 Conn. 430, 450-53, 729 A.2d 725 (1999) (concluding that it was proper exercise of discretion to admit only some convictions); State v. Carter , supra, 228 Conn. at 428-29, 636 A.2d 821 (concluding that it was harmful error to exclude convictions, particularly when there were no other witnesses to homicide). The question before us is whether a victim's subsequent convictions could be admitted as evidence that the victim initiated the **281 confrontation and that the defendant was not the initial aggressor, if such convictions also meet these conditions.
Apparently, this is an issue of first impression nationally, not only in our state. In jurisdictions that permit evidence of a victim's convictions for violent offenses to establish that the victim initiated the confrontation with the defendant, we have identified only one case that addressed the question of whether subsequent convictions may be admissible, albeit not conclusively, answering it in the affirmative. See Commonwealth v. Christine , 633 Pa. 389, 399, 125 A.3d 394 (2015) ("[w]hile we disagree with [the] appellant's position that the trial court abused its discretion [in excluding the subsequent conviction], we do not endorse the claim that a subsequent conviction can never be probative and admissible" [emphasis in original] ). We view the dearth of authority on this issue not to be reflective of the clear lack of merit such evidence may have, but of two other factors at play. First, most jurisdictions, including federal courts, do not permit a defendant to enter into evidence any specific acts of violence unrelated to the crime charged to establish that the victim initiated the confrontation with the defendant, only permitting such evidence if known to the defendant to establish his state of mind at the time of the charged incident. See *7 United States v. Keiser , 57 F.3d 847, 855- 57 (9th Cir.), cert. denied, 576 U.S. 1029, 116 S.Ct. 676, 133 L.Ed.2d 525 (1995) ; Holder v. State , 571 N.E.2d 1250, 1254 (Ind. 1991). Second, in jurisdictions such as Connecticut, where specific acts evidence is admissible for this purpose,[6] because self-defense often is raised to a **282 charge of homicide, the death of the victim necessarily forecloses any conviction arising subsequent to the crime causing the victim's death.
To resolve this issue, we begin with the question of relevance. A comparison of the grounds on which we have deemed convictions predating the charged incident to be relevant is useful. A victim's specific acts of violence may be offered and relevant to establish the defendant's state of mind at the time of the charged incident, in other words, the defendant's belief that he needs to act in self-defense and his belief as to the degree of force necessary. State v. Smith , 222 Conn. 1, 17, 608 A.2d 63, cert. denied, 506 U.S. 942, 113 S.Ct. 383, 121 L.Ed.2d 293 (1992). For this purpose, the victim's subsequent acts of violence would not be relevant to what the defendant believed at the time of the charged incident and, therefore, would be inadmissible. See United States v. Garcia , 729 F.3d 1171, 1178-79 (9th Cir. 2013) (contrasting victim's prior convictions known to defendant at time of charged incident with subsequent convictions for purpose of defendant's state of mind, noting that latter would be irrelevant for that purpose and inadmissible). A victim's specific acts of violence also may be relevant to establish that the victim initiated the confrontation with the defendant, and the defendant was not the initial aggressor, if those acts tend to prove that the victim has a violent nature and acted in conformity with that nature during the charged incident. Unlike the state of mind purpose, however, we cannot say that a subsequent act of violence-no matter how close in time, how substantial in degree, or how similar to the circumstances of the charged incident-could never be probative of whether the victim acted in conformity with that conduct during the charged incident. Indeed, if one week after the charged incident, the victim in the present case was charged with and later convicted of twice engaging in unprovoked **283 assaults on men who had been flirting with White at a bar, one would be hard pressed to conclude that such convictions had no tendency to support the defendant's claim of self-defense in the present case. As such an example demonstrates, a subsequent act that is close in time and highly similar to the charged incident may be more probative of whether the victim initiated the confrontation with the defendant than a prior act that is distant in time and only somewhat similar to the charged incident. Accordingly, we cannot conclude on the basis of relevancy that there should be a per se rule barring admission of evidence of subsequent convictions that are offered to show that the victim initiated the confrontation, rather than the defendant's state of mind.
Having established that the victim's subsequent convictions may be probative of whether the victim initiated the confrontation with the defendant, justifying the defendant to act in self-defense, we consider whether there is some unique aspect of subsequent convictions that otherwise would render them inadmissible as a matter *8 of law. "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Conn. Code. Evid. § 4-3.
The state does not contend that subsequent acts differ from prior acts as to any of these factors except with regard to confusion of the issues.[7] Rather, it contends that, unlike acts that precede the charged incident, the charged incident itself or other incidents that occurred thereafter could be the impetus for the subsequent acts **284 of violence. For example, the victim could develop post-traumatic stress as a result of the charged incident or some other event or events, which in turn caused or could explain the victim's subsequent violent acts. We are not persuaded, however, that this possibility weighs in favor of a per se bar on the admission of this evidence under all circumstances. Should such an occasion arise, the state would be free to introduce evidence that the conduct underlying the victim's subsequent conviction for a violent offense would not have occurred but for the defendant's conduct in the charged incident or other events. In such cases, the trial court would have discretion to determine whether the probative value of the victim's conviction outweighs any confusion that may result from the introduction of evidence related to the cause of the victim's conduct, as well as whether such evidence would result in undue delay or be likely to mislead the jury.
II
Having concluded that there is no per se bar to the admission of a victim's subsequent convictions as evidence that the victim initiated the confrontation with the defendant, we must determine (a) whether the subsequent convictions of the victim in the present case should have been admitted, and (b) if so, whether the defendant is entitled to a new trial on the basis of the failure to admit one or both. We conclude that, even if it was improper to exclude the convictions, the defendant is not entitled to a new trial.
The record reveals the following additional facts and procedural history relevant to this issue. The victim's first judgment of conviction arose from an incident that occurred in June, 2012, approximately ten months after the August, 2011 charged incident. In connection with that 2012 incident, the victim was convicted of misdemeanor assault in the third degree in violation of **285 General Statutes § 53a-61 (a) (1),[8] unlawful restraint in the second degree in violation of General Statutes § 53a-96,[9] and criminal trespass in the first degree in violation of General Statutes § 53a-107.[10] The only information in *9 the record pertaining to the basis of the 2012 conviction comes from representations made by defense counsel in support of its admission. Defense counsel represented that, in a civil case filed by the victim against the defendant, White testified in a deposition that the victim had come to White's house, had broken into the house, and had engaged in violent physical activity with her, spurred by the victim's belief that White was with another man.
The victim's second judgment of conviction arose from an incident that occurred in March, 2013, approximately nineteen months after the charged incident. In connection with the March, 2013 incident, the victim was convicted of breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1),[11] and found to be in violation of probation, General Statutes § 53a-32. With regard to the second incident, defense counsel represented to the court: "White goes out, apparently [the victim] believes she stays out too **286 long at a bar where she claims to have been for fifteen or twenty minutes, he accuses her of hanging out there, and he gets a breach of [the] peace, as well as a violation of probation." The defendant did not proffer evidence related to the location of the 2013 incident or the specific acts of violence underlying the charge of which the victim was convicted.
In light of these facts, we turn to the question of whether the trial court properly precluded the defendant from introducing evidence of these convictions on the ground that they were not sufficiently similar to the charged conduct. "It is well settled that our review is limited to whether there was an abuse of discretion." State v. Abdalaziz , supra, 248 Conn. at 452, 729 A.2d 725. "The trial court has wide discretion in determining the relevancy of evidence ... and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) State v. Osimanti , 299 Conn. 1, 13, 6 A.3d 790 (2010).
As noted, the trial court primarily precluded the evidence of subsequent convictions because, in its view, it was required to do so as a matter of law. Because the trial court's only stated alternative ground for excluding the convictions was their dissimilarity, the Appellate Court limited its review to that factor and concluded that the subsequent acts were similar because the victim's motive in the conduct underlying the subsequent convictions was highly similar to the motive attributed to him by the defendant in the defendant's version of the charged incident, namely, possessiveness of White. We agree with that assessment. We also observe, however, that the sparse record makes it difficult to determine which of the convictions are so similar to the charged incident that it was an abuse of discretion to exclude them.[12] This is particularly so with the breach **287 of the peace charge, which does not contain an *10 act of violence as an element of that offense. See footnote 11 of this opinion.[13]
Even if we assume, however, that it was an abuse of discretion to exclude evidence of the victim's subsequent convictions for assault and for breach of the peace, we are compelled to agree with the Appellate Court that the defendant would not be entitled to a new trial on this basis in any event.
"[E]videntiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) State v. Samuels , 273 Conn. 541, 547, 871 A.2d 1005 (2005). In a criminal case, "[w]hen an improper evidentiary ruling is not constitutional in nature,[14] the defendant bears **288 the burden of demonstrating that the error was harmful .... [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error." (Footnote added; internal quotation marks omitted.) State v. Osimanti , supra, 299 Conn. at 18-19, 6 A.3d 790. Or, as we have stated conversely, "a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) Id., at 19, 6 A.3d 790.
We are not persuaded that the exclusion of evidence of the victim's convictions for violent offenses substantially affected the verdict. The record plainly undercuts the defendant's contention that the state's evidence that he was the initial aggressor was weak. According to accounts, including the defendant's, the victim interacted with the defendant before the defendant struck the victim on terms that were polite, respectful, and nonthreatening. With regard to the second encounter, which again commenced on polite terms, no one, other than the defendant, heard the victim say or saw the victim do anything provocative or threatening. A wholly disinterested witness, the bartender, confirmed the accounts of the victim and White that the victim did nothing to provoke the defendant.
*11 Even Gorski, the defendant's own witness, agreed that the defendant's action in striking the victim with the glass was totally unexpected.
To credit the defendant's version, the jury would need to believe that the victim's demeanor escalated from polite and formal to enraged and physically aggressive in a matter of time so brief that no one other than the defendant noticed the change, despite their close **289 proximity to the victim. Although the victim's subsequent convictions do provide evidence that his jealousy of White being in public without him or with other men could cause him to act in a violent manner, they do not evidence that the victim's demeanor could go from formal and polite to violent within seconds. Moreover, the victim's willingness to leave White at the table and to allow Gorski to convince the defendant to leave plainly was consistent with the victim's repeated admonitions that he did not want any trouble. Accordingly, we are not persuaded that the defendant has met his burden to prove that the exclusion of evidence of the victim's subsequent convictions was harmful error.[15]
The judgment of the Appellate Court is affirmed.
In this opinion the other justices concurred.

Witnesses varyingly testified that the defendant struck the victim with either a glass beer bottle or a glass containing beer. The difference is not material for our purposes.

Specifically, the victim said: "I don't fucking fall when a piece of glass hits my head. What did you think, I was going to get knocked out? I'm a big fucking Russian. Now you found out. You piece of shit coward."

The police also arrested the victim and charged him with breach of the peace. The state subsequently withdrew the charge against him.

The state raised the first issue in a cross petition for certification, and the defendant raised the second issue in his petition for certification. We granted the defendant's petition, certifying both issues in connection with that petition, and dismissed the state's petition. See State v. Jordan , 323 Conn. 920, 150 A.3d 228 (2016).

We note that a defendant has no burden to prove a claim of self-defense, only a burden of production. State v. Singleton , 292 Conn. 734, 747, 974 A.2d 679 (2009). Once the defendant has produced evidence that he acted in self-defense, the state bears the burden to disprove that assertion. Id. The state may do so by proving that the defendant was the "initial aggressor." State v. Jimenez , 228 Conn. 335, 339, 636 A.2d 782 (1994). Where we have previously referred to a victim as the "aggressor," it was in reference to whether the victim engaged in the use or imminent use of physical force that would justify a defendant to act in self-defense; it was not intended to imply that the defendant must prove that the victim was the "initial aggressor."

We note that jurisdictions that permit such evidence vary in their approach, with only some jurisdictions, such as Connecticut, limiting evidence of specific acts to convictions. Compare Jordan v. Commonwealth , 216 Va. 768, 773, 222 S.E.2d 573 (1976) (any specific acts, including uncharged misconduct, admissible), with State v. Alderson , 260 Kan. 445, 461, 922 P.2d 435 (1996) (only convictions admissible).

Although the state argues that the admission of the victim's subsequent convictions in the present case would be more prejudicial than probative, the state does not claim that all subsequent convictions are so prejudicial as to render them inadmissible as a matter of law.

General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when ... (1) with intent to cause physical injury to another person, he causes such injury to such person or to a third person ...."

General Statutes § 53a-96 (a) provides: "A person is guilty of unlawful restraint in the second degree when he restrains another person."

General Statutes § 53a-107 (a) (1) provides in relevant part: "A person is guilty of criminal trespass in the first degree when ... [k]nowing that such person is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person ...."

General Statutes § 53a-181 (a) provides: "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person ... (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place ...."

We underscore that the trial court would be required to make an individualized assessment as to the admissibility of each crime of which the defendant was convicted, as only convictions of a crime of violence that are similar to the conduct alleged in the charged incident would be admissible.

Had the trial court not concluded that the conduct was dissimilar, the state may have sought to introduce evidence that the victim's subsequent conduct was the result of lingering psychological and neurological issues arising from the charged incident, as alluded to by the victim in his testimony in opposition to the defendant's application for diversionary programs; see State v. Jordan , supra, 166 Conn. App. at 40, 140 A.3d 421 ; and raised by the state in its brief before this court. Because the state did not raise this issue in the motion in limine, however, we do not address the impact such evidence would have had on the admissibility of the victim's convictions.

The defendant contends for the first time before this court that the trial court's exclusion of the victim's subsequent convictions deprived him of his federal constitutional right to present a defense. The constitutional right to present a defense does not include the right to introduce any and all evidence claimed to support it. State v. Bova , 240 Conn. 210, 236, 690 A.2d 1370 (1997). In the present case, the trial court's exclusion of evidence of the victim's subsequent convictions did not prevent the defendant from presenting other evidence that supported his theory of self-defense. The defendant's testimony, if credited, supported this theory. Significantly, the jury heard testimony related to the altercation between the defendant and the victim that occurred outside the bar after the charged incident, including the victim's admission that he kicked the defendant twice after the defendant was already on the ground. Further, the court did not grant the state's motion in limine seeking to prevent the defendant from questioning witnesses concerning their opinion of the victim or his reputation for violence, although the defendant did not attempt to do so. Therefore, the question of the admissibility of evidence of the victim's subsequent convictions is one of evidentiary, but not constitutional, dimensions.

The defendant raises numerous arguments challenging the prosecutor's statements made during closing arguments. Insofar as the defendant's arguments are claims of prosecutorial impropriety that were not raised before the trial court or the Appellate Court, he is not entitled to review of such claims. To the extent that the defendant points to the state's closing arguments as evidence of the harm caused by the exclusion of the victim's convictions, we disagree. Read fairly, the state's characterization of the victim "doing his best to not have any problems" is in reference to his multiple attempts to calmly ask the defendant to vacate his seat. Even if, as the defendant contends, the victim's tendency toward jealousy of White would render it more difficult for the victim to remain calm, not a single witness, including the defendant, testified that the victim exhibited any sign of anger when speaking to Gorski or the first time he spoke to the defendant.