### Clyde Harper v. The State.

No. 3236. Decided November 4, 1914.

**1.—Murder—Evidence—Threats—Declarations of Defendant.**

Where, upon trial of murder, the State claimed that the defendant had made threats against the deceased, there was no error in admitting testimony that the witness stayed all night with the defendant between the time of the occurrence of the first wordy altercation and the time of the shooting, and that he saw a pistol in defendant's trunk, who told him that he had it

for a purpose, that he had a man he was looking for, the record rendering it as certain as it was possible to do so without the name being called that the deceased was the man defendant referred to.

### 2.—Same—Rule Stated—Threats.

Though the name of deceased be not mentioned when the threat was made, yet if it can be reasonably gathered that deceased was meant or included in the threat, it is admissible.

### 3.—Same—Evidence—General Reputation.

Where a witness had declined to state that he knew the general reputation of defendant for truth and veracity, there was no error in sustaining an objection to the question whether the witness ever heard the defendant's reputation for truth and veracity discussed or questioned.

### 4.—Same—Rule Stated.

The rule is, before a person can testify to the general reputation of a person in any respect, he must answer that he knows his reputation in the respect inquired about.

### 5.—Same—Evidence—Reputation of Deceased.

Where defendant was permitted to introduce evidence that the general reputation of deceased as a peaceable and law-abiding citizen was bad; that he had killed one man, had had a number of difficulties, and that he had had trouble with a certain party—the nature and circumstance of the difficulty not being stated or shown that they were known to defendant—there was no error in excluding testimony explaining the nature and circumstances of said difficulty; only such matters the defendant may have known as to the conduct of deceased could possibly be admissible. Following Lubbock v. State, 66 Texas Crim. Rep., 309, and other cases.

### 6.—Same—Charge of Court—Requested Charges—Self-defense.

Where, upon trial of murder, the court submitted a full and complete charge on self-defense, and also requested charges which were applicable to the facts, there was no error in refusing requested charges which were covered in the main charge.

### 7.—Same—Good Faith—Charge of Court.

Upon trial of murder, the words, "in good faith" on the issue of self-defense should not have been embraced in the court's charge; however, in applying the law to the facts, these words were not used, and there was no reversible error. Following Puryear v. State, 56 Texas Crim. Rep., 231, and other cases.

### 8.—Same—Charge of Court—Defensive Theory—Threats.

Where, upon trial of murder, the theory of the defense was that although deceased was not armed when the homicide occurred, yet in the light of the previous threats and the character and disposition of deceased, defendant believed his life was in danger, and the court fully submitted this theory in his charge to the jury, and did not use the words, "in good faith," in this portion of the charge, there was no reversible error.

Appeal from the District Court of Wood. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Jones & Jones* and *M. D. Carlock,* for appellant.—On question of evidence of threats: Maclin v. State, 65 Texas Crim. Rep., 384, 144 S. W.

Rep., 951; Holley v. State, 39 Texas Crim. Rep., 301; Gaines v. State, 53 S. W. Rep., 626; Duke v. State, 61 Texas Crim. Rep., 19, 133 S. W. Rep., 432; Fuller v. State, 54 Texas Crim. Rep., 454; Barbee v. State, 50 id., 426; Garrett v. State, 52 id., 255.

On question of general reputation: Tyler v. State, 46 Texas Crim. Rep., 10.

*C. E. Lane*, Assistant Attorney General, for the State.—On question of defendant's belief of danger: Tillery v. State, 24 Texas Crim. App., 251; Shumate v. State, 38 Texas Crim. Rep., 266.

HARPER, JUDGE.—Appellant was indicted, charged with the murder of Frank Fowler. When tried he was convicted of manslaughter, and his punishment assessed at the lowest term fixed by law—two years in the penitentiary.

The record is quite voluminous, but there are but few questions presented which we feel called upon to discuss. The record discloses that deceased had a bad reputation for peace and quietude; that he had been in several difficulties, and had killed one man; that he bore the reputation of being a man who would carry a threat into execution. Evidence of threats made by deceased, some of which were communicated, and some of which were not communicated to appellant before the fatal encounter, was admitted. The evidence would show that up to a short time before the difficulty, apparently appellant and deceased had no ill-will towards the other, but deceased did bear ill-will towards a brother of appellant, Wiley Harper, and out of this grew the feeling that is claimed to exist towards appellant. It appears that a man named Laney had killed Hillory Bailey, and deceased's son was a witness in that case, and upon returning home with his father they met appellant in the road. Shelby Fowler, the son of deceased, says that when appellant met them appellant asked him how the trial came out, and he answered that no verdict had been reached. Appellant then remarked, "I always liked Hillory Bailey; he was a nice fellow, and that Bailey treated him better than nearly anybody in the county." The contention of the State is that appellant then knew that deceased did not like Bailey; that Bailey had been charged before his death with having raped a niece of deceased. Anyway, the son testifies deceased spoke up and said, "Yes, that's all right—all damn trash take up together." Appellant rode off, remarking as he did so, "I will see you some day, or I will get you some day." Appellant's version of this transaction is, that instead of deceased saying what Shelby says, deceased said, "Yes, because you are such a God damn liar yourself," when he replied to deceased that he ought not to abuse him (appellant) and deceased remarked, "I will kill you, too, you G—d d—n son of a b—h, just like he was." That he made no reply to this. That he merely rode off and did not use the language Shelby Fowler attributed to him.

The evidence further shows that shortly after this the deceased visited

Dallas, and while there secured a pistol. Also, that appellant secured a pistol from his brother, Wiley, he giving as his reason that he feared deceased would kill him, knowing the reputation of deceased. Outside of threats this is all that is shown to have occurred until the day of the killing. On that day deceased and appellant had met in a store at Stout, but no conversation is shown to have taken place between them. The State's theory evidently is, that appellant rode out on the road that he knew deceased would travel on his way home, and when deceased came along appellant began shooting and continued to shoot until he had emptied his pistol, striking deceased several times; that deceased was driving along the road, making no demonstration.

Appellant testifies that he had gone out on this road to see some parties about participating in an entertainment that the literary society of Stout was going to give, and as he was returning he met deceased driving along the road. That when they met, deceased said, "I hear you have been talking some about me cursing you out up yonder the other day, and I don't know if this is not about as good a time as any to settle it," and stopped his wagon. That he, appellant, then put his hand on his pistol, and deceased threw his hand under his coat, when he, appellant, shot twice—then getting off his horse he shot four more times. That deceased did not fall until he shot the last shot, and all the time was acting as though he was trying to get a gun, and he was looking for him to shoot.

The evidence discloses that deceased was not armed at this time, and the verdict of the jury would indicate that they believed deceased made the remarks testified to by appellant, but they did not believe that he attempted to draw a pistol, nor made any demonstration whatever, and the evidence as a whole would support such a finding.

In the first bill of exceptions appellant complains of certain portions of the testimony of the witness Jeb Moses. This witness testified that he stayed all night with appellant between the time of the occurrence of the first wordy altercation and the time of the shooting. On this occasion he saw a pistol in appellant's trunk, and he testified appellant told him he had it for a purpose—he had a man he was looking for. This testimony was objected to on the ground that it was not shown it had any reference to deceased—that it did not individuate him as the man referred to. Appellant denies using such language, but if he did use it, the record before us renders it as certain as it is possible to do so, without the name being called, that deceased was the man referred to. He had had no difficulty with any other person—no differences of any character with any other party, and the court did not err in admitting the testimony, the statement being made so shortly after Shelby Fowler testified appellant had said to deceased, "I will see you some day, or I will get you some day." As said in Mr. Branch's work on Criminal Law, "Though the name of deceased be not mentioned when the threat was made, yet if it can be reasonably gathered that deceased was meant, or included in the threat, it is admissible." (Sec. 479 and authorities there cited.)

Appellant complains that the witness Tip Anderson was not permitted to answer the question, "Have you ever heard the defendant's reputation for truth and veracity discussed or questioned?" As the witness had declined to state that he knew the general reputation of appellant in this respect, there was no error in the ruling of the court. Almost any person whether he had ever met appellant or not could probably answer the question, that they had never heard his reputation in this respect discussed or questioned, but it would have little or no force unless the person had placed himself in position to know and had been brought in contact with those with whom appellant associated. The rule is, before a person can testify to the general reputation of a person in any respect, he must answer that he knows his reputation in the respect inquired about. All witnesses who stated they knew appellant's reputation in this respect were permitted to testify it was good, and the State offered no evidence in contravention of such testimony.

The defendant introduced evidence that the general reputation of deceased as a peaceable and law-abiding citizen was bad; introduced proof that he had killed one man; had had a number of difficulties, and evidence had been elicited that he had trouble with one John Nixon. The defendant called Nixon to the stand, and, among other questions, propounded to him the following: "Tell the jury about the difficulty and explain the nature and circumstances of the difficulty to the jury." The court did not err in sustaining the objections to his question, as the court should not have, in this case, tried the merits of that difficulty. It is not stated in the bill that this witness had told appellant "the nature and circumstances of the difficulty," or that appellant had heard them from any other source. All the record shows is that appellant testified afterwards, that he heard of this difficulty, and that deceased had this difficulty was permitted to be proven, but appellant does not contend that he had ever heard the particulars, or the nature and circumstances attendant upon the difficulty, and it is only such matters as appellant knew or had heard which are admissible as affecting his viewpoint in a case where self-defense is an issue. This court, in a number of cases, has upheld the rule laid down by Wharton and Bishop: "Mr. Wharton thus states the rule: 'Taking the authorities as a whole, therefore, we may hold that it is admissible for the defendant, having first established that he was assailed by the deceased, and in apparent danger, to prove that deceased was a person of ferocity, brutality, vindictiveness, and of excessive strength; such evidence being offered for the purpose of showing either (1) that the defendant was acting in terror, and hence incapable of that specific malice necessary to constitute murder in the first degree; or (2) that he was in such apparent extremity as to make out a case of self-defense; or (3) that the deceased's purpose in encountering the defendant was deadly.' Whart., Crim. Ev., sec. 69084. Mr. Bishop says: 'Where the defendant, to excuse or mitigate his acts, claims that they were in self-defense or passion, the particulars of the transaction being thus material, and the law judging him by the facts and necessities as they appeared to him, whatever they

truly were, he may give in evidence anything known to him of the character, prior conduct, threats, or other utterances of the person with whom he was contending, which, not as showing that the man was bad, but that in the special instance and circumstances he was dangerous, might reasonably have place among the considerations guiding his actions." (2 Bish., Crim. Proc., sec. 610.) But it is manifest it is only such matters one may know or has been told which could possibly have any bearing. Patterson v. State, 56 S. W. Rep., 59; Lubbock v. State, 66 Texas Crim. Rep., 309, 147 S. W. Rep., 258; Branch's Crim. Law, sec. 473.

These are all the bills relating to the testimony, but there are a number reserved to the failure of the court to give special charges requested, and to the charge as given. Defendant asked nineteen special charges, part of which were given, and he complains of the failure of the court to give each of the other fifteen. They all relate to the issue of self-defense, and we have read each of them carefully, but we think the court's charge as given and the four special charges given at appellant's request present fully this issue as made by the testimony. The court instructed the jury that they could not consider the fact that appellant was armed as a circumstance against him; that appellant was not required to retreat in order to avoid the necessity of slaying the deceased; that it was not necessary that there should be actual or real danger, if viewing the facts and circumstances from his standpoint it reasonably appeared to him there was danger of death, or of suffering some serious bodily injury; relating to the law of threats; that if he was justifiable in firing the first shot, he had the right to continue to shoot as long as it appeared to him, viewed from his standpoint, that the danger continued; that the appellant had the right to travel the road on which the difficulty occurred, and that he was traveling this road would in nowise impair his right of self-defense—in fact, each and every phase bearing on the issue of self-defense was fully covered in the main charge, and the four special charges which were given at appellant's instance. The special charges refused were but a reiteration in different language of those which were given by the court. There is one criticism of the main charge, where the court in one paragraph thereof uses the words "in good faith," that should be noticed. These words should never be used in the charge on self-defense as has been frequently decided by this court, but the use of them is not a cause for reversal in every case. (Puryear v. State, 56 Texas Crim. Rep., 231; Kelly v. State, 68 Texas Crim. Rep., 317, 151 S. W. Rep., 304.) Especially is this true where, in applying the law to the facts of the particular case, the words do not appear in that portion of the charge submitting that issue. Appellant's defensive theory is, that although deceased was not armed on this occasion, yet in the light of the previous threats and the character and disposition of deceased. he believed his life was in danger. On this issue the court instructed the jury:

"If you shall find that prior to the homicide the defendant had been

informed that the deceased had threatened his, defendant's, life, and if you shall further find that, at the time he fired the first fatal shot, viewing the facts and circumstances from his standpoint, it reasonably appeared to the defendant that the. deceased, Fowler, by some act then done or by words coupled with some act then done manifested an immediate intention to execute the threat, if any, of which defendant had been informed, you will acquit the defendant, although you may find the deceased, Fowler, had made no threat against the life of defendant, and he was in no real danger at the time he fired such shot.

"The law provides that threats made by the deceased may be given in evidence and considered by the jury for the purpose of explaining the acts and conduct of the deceased at the time of the homicide, whether the same had been communicated to the defendant or not. Now if you find from the evidence in this case that the deceased, Frank Fowler, made threats against the defendant and you further find that such threats were not communicated to the defendant, then you may consider said threats for the purpose of explaining if they do the acts and conduct of the deceased, Fowler, at the time of the homicide.

"If you believe from the evidence in this case that prior to the homicide the deceased, Frank Fowler, made threats against the defendant's life, and if you further find that such threats were communicated to the defendant, and the defendant believed that such threats were true, and if you further find that at the time of the homicide the deceased, Frank Fowler, by some act then done or some words then said, coupled with such acts, if any, which reasonably created in the mind of the defendant an apprehension that the deceased, Frank Fowler, was in the act of executing the threats so made, or if the deceased by his acts or demonstrations, if any, either alone or coupled with the words, if any, indicated that he was then and there about to unlawfully attack the defendant, and inflict upon him death or serious bodily injury, and that defendant so believing shot and killed the deceased, then the same would be justifiable homicide; and if you so believe from the evidence you will find the defendant not guilty and so say by your verdict; and in passing upon this you may take into consideration the character and disposition of deceased as the same was known to defendant as well as the habit of deceased, if any, of going armed, if the defendant knew of such habit."

These charges fairly, fully and succinctly presented the law as applicable to the evidence introduced on this trial, and there is no error in the record, which would justify us in reversing the case.

The judgment is affirmed.

*Affirmed.*