THE STATE OF CONNECTICUT vs. TONY PADULA.

Third Judicial District, New Haven, June Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

When a plea of self-defense is made to a charge of murder, evidence of the reputation of the deceased for violence is generally admissible to show the reasonableness of the belief of the accused that his life was in peril, provided such reputation was known to him, and provided the hostile demonstration of the deceased against him would not be regarded as sufficient to warrant extreme defensive measures except when considered in the light of such knowledge.

In the present case, it did not appear that the reputation of the deceased for violence was known to the accused, who testified, furthermore, that the alleged necessity of defending himself by shooting arose in his mind solely from the conduct of the deceased in unsheathing and raising a knife as if about to strike. *Held* that evidence of the reputation of the deceased was properly excluded.

Even where evidence of general reputation is admissible, proof may not be given of specific acts of violence upon other persons which are no part of the *res gestæ* and in no way connected with the accused.

Nor is evidence of the general reputation of the deceased admissible to establish the probability that he, and not the accused, was the aggressor in the fight preceding the killing.

The character of an accused cannot be attacked by the State until he himself puts it in issue.

Argued June 4th—decided July 25th, 1927.

INDICTMENT charging the accused with the crime of murder in the second degree, brought to the Superior

Court in Fairfield County and tried to the jury before *Wolfe, J.;* verdict and judgment of guilty, and appeal by the accused. *No error.*

*Carl Foster,* with whom, on the brief, was *Daniel Keogh,* for the appellant (the accused).

*Lorin W. Willis,* with whom, on the brief, was *William H. Comley,* State's Attorney, for the appellee (the State).

HINMAN, J. The State offered evidence to prove that as Genario Clementi was leaving the house of his uncle, one Pavella, he was accosted by the accused who demanded payment of a loan which he claimed to have made him; that Padula's demands became so loud that Pavella and his wife and daughter came out of their house; that Padula drew a knife with his left hand and brandished it about, whereupon Clementi grasped his left wrist to prevent him from doing injury with the knife; that Padula then drew a revolver and, freeing himself from the grasp of Clementi and still holding the knife in his left hand, stepped back several paces and shot Clementi twice, the second time while Clementi was lying on the ground; that Padula then ran away and escaped, carrying with him the revolver and the knife, which were later found buried in the woods at a point disclosed by Padula to a relative with a request to him to get "my knife and gun."

The defendant's version of the affair as related by him on the trial was that during the argument about the money Clementi told him that he had killed two people in Italy and that if Padula asked him again for the money he would be the third one; that Clementi punched him with his fist on the forehead, and later pulled a knife out of a sheath, raised it as if to

The State *v.* Padula.

strike the defendant, and threatened to kill him; that defendant was then afraid of Clementi and fired two shots, both while Clementi was standing on his feet; that the knife and sheath, which he carried away, belonged to Clementi.

The finding discloses that the defendant made no statement upon direct examination whether he knew that Clementi had a reputation for violence, or whether he was afraid of Clementi when he met him on the night in question, but on cross-examination he testified that he had had no previous quarrel with Clementi, that at the time of their meeting in the street Clementi had not done anything to him, or had trouble with him, and that the only time he was afraid of Clementi was when he came toward him with the knife.

The defendant attempted to introduce evidence of the reputation of the deceased, Clementi, for violence, and it is contended that this evidence was admissible as tending to show the state of mind or intent of the defendant at the time of the shooting, and that its exclusion was erroneous. When a defendant charged with murder asserts that he killed in self-defense, his state of mind—the existence and reasonableness of apprehension of such violence by the deceased as to justify the defensive measures adopted—becomes material. If the reputation of the deceased be that of a violent, dangerous, or turbulent character, such reputation, if known to the defendant, may be a circumstance contributing to a reasonable belief by the accused that his life is in peril and his consequent state of mind as to the necessity of defending himself and the means justifiably to be taken in so doing. Evidence of such reputation, if shown to be known to the defendant, is therefore, in proper cases, generally held to be admissible. 1 Wigmore on Evidence (2d Ed.) §§ 63, 246; 13 R.C.L., Homicide, § 219. To render

evidence of such character admissible, however, there must be some demonstration by the deceased which, if considered independently of his character, would not be regarded as sufficient to warrant extreme defensive measures, but when observed and considered in connection with such character may reasonably arouse a belief of imminent peril. *Garner* v. *State,* 28 Fla. 113, 136, 9 So. 835; *Jones* v. *The People,* 6 Colo. 452; *DeArman* v. *State,* 71 Ala. 351, 361; *Carle* v. *The People,* 200 Ill. 494, 66 N. E. 32.

Such a situation is not here presented. Even had it appeared that the reputation of Clementi was that of a violent character, there is nothing in the record intimating that it was known to the defendant. Furthermore, it plainly appears from defendant's testimony that the alleged necessity of defending himself by shooting the deceased arose in his mind only through the claimed conduct of Clementi with reference to the knife, and unaffected by the character of the deceased. Evidence of deceased's reputation was, therefore, properly excluded when offered for this purpose.

A witness called as to deceased's general reputation was asked whether Clementi had made an attack upon him, and another if he had ever had any experience with Clementi of a violent nature, and the exclusion of these questions is also assigned as error. Even when proof of the general reputation of a deceased is competent, proof may not be given of specific acts of violence upon other persons which are no part of the *res gestæ,* and in no way connected with the accused. This is so, not only because character is not established by proof of isolated individual acts, but also because each specific act would involve inquiry as to the circumstances surrounding the occurrence, creating multiplication and confusion of issues. *People* v.

*Rodawald,* 177 N. Y. 408, 70 N. E. 1; *Smith* v. *State,* 132 Ind. 145, 149, 31 N. E. 807; *Harper* v. *State,* 75 Tex. Crim. 124, 170 S. W. 721.

In this case the evidence sought to be elicited was subject to the further objections, that it did not appear that the accused had any knowledge of the alleged occurrences, but it did appear that his state of mind could not have been affected materially thereby or by any other consideration than the claimed demonstration with the knife. For the latter reason the exclusion of a question to the accused as to whether he had been told by someone of Clementi having previously been in a fight where he had a razor was not erroneous, and even had an affirmative answer been admitted could not have been helpful to the accused on the question of his apprehension of violence at the time he shot Clementi.

The appellant also urges that evidence of the reputation of Clementi was admissible as evincing a probability that he would violently and dangerously attack the defendant and so tending to support the claim of the latter that the deceased was the aggressor. Statements may be found in the books to the effect that when a claim of self-defense is interposed by a person accused of homicide and a doubt is raised as to which party was the aggressor, evidence of the reputation of the deceased for violence or similar traits of character may be admitted for the purpose of indicating what the deceased probably did,—and this without reference to the state of mind of the accused and without proof that he had knowledge of such reputation. 4 Elliott on Evidence, § 3038; 13 R.C.L. pp. 916, 918; 1 Wigmore on Evidence (2d Ed.) § 63. However, a painstaking examination of the cases cited by the textbooks to this proposition (and the appellant's brief directs us to none) discloses that those which appear

to support such a ruling independent of and uncomplicated by considerations relating to the defendant's state of mind, are few in number and lacking or unconvincing in reasoning. On the other hand, the proposition involves a patent inconsistency and element of unfairness, unless similar evidence may also be given as to the reputation of the defendant, as bearing on the probability that he was the aggressor. *People* v. *Rodawald*, 177 N. Y. 408, 70 N. E. 1, 5. If a violent disposition is to be given probative force in determining who was the aggressor, it is, logically, as applicable to the accused as to the deceased; yet so long as the accused does not put his character in issue, it may not be attacked by the prosecution nor be utilized to combat the intimation sought to be created by evidence of the character of the deceased. It will be seldom, also, that in a case where a claim of self-defense is interposed the question as to which party was the aggressor cannot be as much placed in issue as the state of mind of the accused, and the result of an unlimited application of such a rule would be to interject the character of the deceased with the resulting temptation "to measure the guilt of the accused by the deserts of the victim" into all such cases. The aggression claimed by the defendant—the striking by Clementi with his fist—would not have warranted the killing; the decisive question was as to which, in the course of the altercation, drew and attempted to use the knife, and, as to this, the ownership and original possession of the knife was the controlling factor. The disposition of the deceased could be of no legitimate assistance in determining this question. Character evidence was inadmissible for the purpose of indicating a probability that the deceased was the aggressor and was properly excluded.

The exclusion of the question addressed to Parella

as to whether he had carried weapons before the night in question, and the admission of the testimony of Lengyel as to a statement by defendant contradictory of his evidence as to why he went armed on that night, were unobjectionable.

There is no error.

In this opinion the other judges concurred.