THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. MARK LEN, ALIAS MARK TOY, PLAINTIFF IN ERROR.

Submitted October 16, 1931—Decided February 5, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and CASE.

For the plaintiff in error, *Robert Peacock.*

For the state, *Howard Eastwood,* prosecutor of the pleas.

The opinion of the court was delivered by

PARKER, J. The plaintiff in error was convicted on an indictment charging in the first count assault with intent to kill, and in the second simple assault and battery. The defense was self-defense. The complaining witness George Hong had a small laundry at Burlington and claimed that the defendant came in, and after some preliminaries not now material, seized a flatiron, beat him over the head with it until he fell to the floor, and ran out. Defendant's version of the occurrence was that he visited Hong's place to collect some money due him, that Hong hald told him it had been paid to one Wong but this was untrue and that he insisted on being paid, Hong told him to get out; he refused to go; Hong grabbed him by the neck, and in self-defense defendant seized an iron, apparently the most convenient weapon available, and hit Hong with it.

Defendant's counsel then asked his client the following questions, which were excluded by the court:

"*Q.* Now, on the day in question, when you had this argument with George on Friday, why did you hit him with the iron? *Q.* At the time you struck George, were you afraid of him? *Q.* At the time you struck George, did you believe you were in fear [*sic*] of bodily injury at the hands of George? *Q.* At the time George had you by the throat and you struck him with the iron, what did you think he was about to do to you?"

Counsel claimed "the right to ask this witness what was in his mind at the time he hit him. The jury is entitled to know what was in his mind." The court held counsel "could show the circumstances of what he did at the time" but shut out any testimony of defendant respecting his mental attitude.

This, we think, was error. The court charged the law of self-defense, perhaps too favorably to the defendant, saying for example, "if the defendant thought the complaining witness was about to do him bodily harm he had the right to protect himself to the extent of taking life in order to save himself from serious bodily harm," and that "it is a question for you to decide what was in the mind of the defendant at the time this alleged assault took place," &c. Of course this states the rule of self-defense too liberally because of omitting the element of reasonability in the fear of a party attacked. The rule is shortly stated in *State* v. *Jayson,* 94 *N. J. L.* 467 (at *p.* 471), as follows: "An accused is justified in using force to defend his person only when force is necessary, or *reasonably appears* to be necessary, to accomplish that end." So here it was for the defense to show, on the second alternative, both that the force used appeared to him to be necessary, or to put it in another way, that he deemed it necessary; and that this judgment or opinion of his was under the circumstances a reasonable one. So in a homicide case the rule as laid down in *State* v. *Bonofiglio,* 67 *Id.* 239 (at *p.* 245), is that "a man may protect himself even to the extent of taking the life of his adversary, when that act is or reasonably *appears* to be, necessary in order to pre-

serve his own life or to protect himself from serious bodily harm."

In attempting to prove the state of his mind the defendant was not allowed to testify to what he thought at the time. We think that ever since by the statute of 1871 (*Pamph. L., p.* 12), appearing in the Revision of 1877, at page 379, as section 8 of the Evidence act, and now embodied in section 57 of the Criminal Procedure act (*Comp. Stat., p.* 1838), the defendant in a criminal prosecution has been permitted to testify in his own behalf, it has been the uniform practice of our courts to permit a defendant who claims that the force used by him reasonably appeared to be necessary in his own protection, to testify that he thought it necessary, and then to show that the conditions were such as to justify him in so thinking. Unless he is entitled to testify as to what he thought, it is difficult to see how self-defense, based on apparent though not actual danger, can be made out. Reported cases on the precise point appear to be few, but in our experience the admission of testimony of an accused as to his mental condition, when that condition is relevant to the issue, is of every day occurrence. See *Wigm. Ev.,* ¶ 581, and numerous cases cited. In the recent Connecticut case of *State* v. *Padula,* 138 *Atl. Rep.* 456; 106 *Conn.* 454, defendant testified without objection that deceased drew a knife and threatened to kill him, that he was afraid, and fired. In *Kerrains* v. *People,* 60 *N. Y.* 221, on indictment for assault with an axe with intent to kill, defendant's testimony of his intent in taking the axe from the woodhouse was held competent. In *Wallace* v. *United States,* 162 *U. S.* 466, a murder case, defendant testified that deceased threatened to kill him, but was not allowed to say what he believed the deceased was about to do, and this was held to be error, the court saying (at *p.* 477) : "We think that the threats were admissible in evidence, and this being so, that the question as to Wallace's belief should not have been excluded. It has been often decided that where the intent is a material question, the accused may testify in his own behalf as to what his intent was in doing the act." (Citing cases.) We repeat, there-

fore, that it was error on the part of the trial court to exclude testimony of the defendant to the effect that when attacked by the complaining witness he was in fear of bodily injury and struck to protect himself against that injury. Of the four questions above quoted, three were clearly leading and the ruling of the court as to them may well be sustained on that ground. But the first question was properly framed, and calculated to bring out the fact that defendant was in fear. Counsel was careful to explain to the court that "the jury is entitled to know what was in [defendant's] mind" "and what he believed the other man was about to do" but the court, with the point thus plainly made, ruled out all testimony about what defendant thought or feared, holding that it must be gathered from what was done, and from that alone. This error was manifestly injurious, and must lead to be a reversal and a *venire de novo*. Such will be the order.