******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* DANIEL
RICHARD STREIT
(SC 20336)

Robinson, C. J., and McDonald, D'Auria, Kahn, Ecker and Keller, Js.

*Syllabus*

Convicted of manslaughter in the first degree in connection with the stabbing death of the victim, the defendant appealed, claiming that the trial court abused its discretion by precluding him from introducing evidence, in support of his self-defense claim, that the victim had searched a retail website for weapons in the days preceding the stabbing. The defendant and the victim had been involved in two fights the week before the stabbing, and, after each altercation, the victim threatened to kill the defendant. The stabbing at issue occurred a few days later, after the victim approached the defendant. The defendant filed a motion in limine, seeking to introduce into evidence a forensic analysis of data extracted from the victim's cell phone showing that the phone had been used to conduct certain online searches for weapons between the first fight and the stabbing. The court denied the motion in limine, concluding that, because there was no evidence that the victim had purchased any of the items he searched for or that the defendant was aware of the victim's search activity at the time of the stabbing, the search history was not relevant to prove the defendant's state of mind with respect to whether his fear of the victim was subjectively and objectively reasonable under the provisions (§ 4-4 (a) (2) and (b)) of the Connecticut Code of Evidence permitting an accused in a homicide case to introduce evidence of the victim's violent character under certain circumstances. The court further concluded that the search history was not admissible to prove that the victim was the initial aggressor because the victim's act of searching for weapons did not result in a criminal conviction. On the defendant's appeal from the judgment of conviction, *held* that the trial court did not abuse its discretion in denying the defendant's motion seeking to introduce evidence of the victim's online searches for weapons: a defendant in a homicide case, after laying a proper foundation that he acted in self-defense, may introduce evidence of the victim's violent character to prove that the victim was the aggressor, regardless of whether such character evidence had been communicated to the accused prior to the homicide, and such violent character can be proven by opinion or reputation testimony, or evidence of the victim's conviction of violent crimes, but not by specific violent acts not resulting in a criminal conviction; in the present case, the defendant's lack of awareness of the victim's online searches rendered them irrelevant for purposes of establishing the defendant's state of mind because they could not have impacted the defendant's subjective belief that he needed to resort to deadly physical force, and the defendant did not claim that the searches themselves constituted violent crimes; moreover, the defendant could not prevail on his claim that the search history was admissible as a prior act of misconduct under the relevant provision (§ 4-5 (c)) of the Connecticut Code of Evidence, because, even if the searches were evidence of prior misconduct admissible to prove the victim's state of mind, § 4-5 (c) does not apply to evidence of the victim's violent character in homicide cases, which is specifically covered by § 4-4 (b), and § 4-4 trumps the more general rules set forth in § 4-5 regarding the admissibility of specific act evidence.

Argued April 29—officially released October 22, 2021*

*Procedural History*

Two part substitute information charging the defendant, in the first part, with manslaughter in the first degree and, in the second part, with being a persistent dangerous felony offender, brought to the Superior Court in the judicial district of New Haven, where the

first part of the information was tried to the jury before *Vitale, J.*; verdict of guilty; thereafter, the defendant was presented to the court, *Clifford, J.*, on a plea of guilty as to the second part of the information; judgment of guilty in accordance with the verdict and plea, from which the defendant appealed to this court. *Affirmed.*

*Gary A. Mastronardi*, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Karen Roberg*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, C. J. In this appeal, we consider whether evidence that the victim had conducted Internet searches for dangerous weapons in the days preceding the altercation at issue is admissible in support of a criminal defendant's claim of self-defense. The defendant, Daniel Richard Streit, appeals[1] from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1). On appeal, the defendant claims that the trial court abused its discretion in determining that evidence that the victim had searched an Internet shopping site for weapons in the days leading up to the altercation in which the defendant fatally stabbed the victim was both irrelevant and not admissible as uncharged misconduct evidence under § 4-5 (c) of the Connecticut Code of Evidence.[2] We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following facts, which the jury reasonably could have found, and procedural history. At all relevant times, the defendant lived in New Haven with his girlfriend, Kathleen O'Dwyer. The defendant was also dating Kathryn Wallace, who was the "on-again, off-again" girlfriend of Keith Wylie, the victim. After the victim broke into Wallace's home in September, 2017, which resulted in the issuance of a protective order and second degree breach of peace charges against him, Wallace no longer felt safe at her home and moved in with O'Dwyer and the defendant.

On the morning of October 3, 2017, the defendant and the victim engaged in a fistfight near the APT Foundation (clinic), a methadone clinic on Congress Avenue in New Haven where Wallace was participating in a treatment program. After the fight was broken up, the victim threatened to kill the defendant. The defendant and Wallace, who was also involved in the fight, returned to their residence, where O'Dwyer photographed their injuries—the defendant had cuts and scrapes, and Wallace had a black eye. Several days later, the victim and the defendant fought again in front of the clinic. After this second fight was broken up, the victim, who had a reputation among the participants in the treatment program as a violent and aggressive person, once again threatened to kill the defendant. The defendant previously had expressed animosity toward and a desire to "get" the victim, or to "kick his ass," because of the victim's physically abusive behavior toward Wallace when they were dating.

Several days later, on Saturday, October 7, 2017, the defendant and Wallace walked to the clinic. While Wallace went inside, the defendant, who was wearing latex gloves on both hands and carrying a Smith & Wesson "special ops" knife, waited in front of the clinic. The victim arrived approximately thirty minutes later,

parked his car, exited his vehicle, and walked directly toward the defendant. According to the defendant's statement to the police, the victim told him that they were " 'going to finish this right now.' " The defendant then lunged at the victim, and a fight ensued between them on the sidewalk in front of the clinic; during the fight, there was a struggle over the knife, and the defendant stabbed the victim seventeen times, causing nine significant wounds to the victim's neck, torso, and right arm that resulted in his death. During the altercation, the defendant was yelling for someone to pull the victim off of him. Once the defendant was able to, he and Wallace ran from the scene, with the defendant ripping off his gloves and the blood-stained Spiderman sweatshirt that he had been wearing and discarding them while running. A few minutes later, New Haven police officers responded to a call about the fight and apprehended the defendant and Wallace nearby on York Street. The police arrested the defendant, who had visible facial and hand injuries at that time. When arrested, the defendant stated that he had no regret for what had happened and that the victim "got what he deserved."

Subsequently, the state charged the defendant with manslaughter in the first degree, to which he pleaded not guilty, and the case was tried to a jury. At trial, the defendant sought to establish that he had acted in self-defense.[3] In support of his claim of self-defense, the defendant filed a motion in limine seeking permission to offer into evidence an "[e]xtraction [r]eport," generated using forensic software called Cellebrite, that a forensic examiner had used to examine the victim's cell phone, which had been seized by the police. The extraction report indicated that, between October 3 and the fatal altercation on October 7, the victim's cell phone had been used to search a shopping website, eBay, for weapons, including stun guns, mace guns, and brass knuckle gloves. The defendant argued that these searches, conducted after the victim had threatened to kill the defendant on October 3, were relevant to his claim of self-defense—even though he was not personally aware of them—as evidence (1) of the state of mind of both the victim and the defendant with respect to the subjective and objective reasonableness of the defendant's fear of the victim, and (2) that the victim was the initial aggressor.[4] As a basis for admitting the extraction report, the defendant cited §§ 4-1, 4-2 and 4-4 (a) (2) of the Connecticut Code of Evidence[5] and the Massachusetts Supreme Judicial Court's decision in *Commonwealth* v. *Carey*, 463 Mass. 378, 974 N.E.2d 624 (2012). The defendant also sought an "extension" of this court's decision in *State* v. *Miranda*, 176 Conn. 107, 405 A.2d 622 (1978). He further relied on his federal and state constitutional rights to present a defense. The state objected to the defendant's motion in limine.

After a hearing, the trial court agreed with the state's objection and denied the defendant's motion in limine.

Considering the defendant's claims of relevance in the context of the well established subjective-objective standard that governs claims of self-defense under General Statutes § 53a-19 (a);[6] see, e.g., *State* v. *O'Bryan*, 318 Conn. 621, 632–33, 123 A.3d 398 (2015); the trial court concluded that the proffered evidence was outside the "parameters specific to issues regarding self-defense and the defense of others with regard to past conduct related to the complainant or decedent, vis-à-vis the defendant in such a case." Assuming the authenticity of the searches and that the victim was the person who had conducted them, the trial court first observed that there was no evidence "that indicated anything was actually purchased" as a result of the Internet searches. Emphasizing that there was no evidence that the defendant was aware of the Internet searches or that any of the weapons he searched for were found on the victim's person or at the crime scene, the court reasoned that the evidence of the searches had a "clear" prejudicial effect insofar as they were not relevant to the defendant's state of mind for purposes of admissibility under § 4-4 (b) of the Connecticut Code of Evidence. The trial court further determined that the searches were not admissible to prove that the victim was the initial aggressor because, under the line of cases following *State* v. *Miranda*, supra, 176 Conn. 107, such as *State* v. *Whitford*, 260 Conn. 610, 799 A.2d 1034 (2002), evidence of specific acts of violence not resulting in a criminal conviction may not be used to establish a victim's violent character.[7] Ultimately, the trial court determined that the "jury ha[d] . . . ample evidence to consider as to the nature of the relationship between the defendant and [the victim] sufficient to [allow the defendant to] make the argument with regard to his subjective state of mind and his fear of [the victim]. The court conclude[d] that [the Internet search evidence was] not admissible or relevant or material to any issue the jury must decide, and, even if [the evidence had] some slight relevancy, it ha[d] the potential to confuse or arouse the jury [such] that any probative value [was] outweighed by its prejudicial effect."[8]

Thereafter, the jury returned a guilty verdict on the manslaughter charge; the defendant subsequently pleaded guilty to part B of the information seeking an enhanced penalty pursuant to General Statutes § 53a-40 (a) on the ground that he was a persistent dangerous felony offender.[9] After denying the defendant's motions for a new trial and a judgment of acquittal notwithstanding the verdict, the trial court rendered judgment of conviction in accordance with the verdict and plea and sentenced the defendant to a total effective sentence of thirty-eight years' imprisonment. This appeal followed.

On appeal, the defendant claims that the trial court improperly denied his motion in limine because the victim's Internet searches were relevant to prove the state of mind of both the victim and the defendant under

the principles discussed in *State* v. *Miranda*, supra, 176 Conn. 107, and were not, contrary to the trial court's conclusion, offered to establish the victim's violent character. The defendant renews his reliance on *Commonwealth* v. *Carey*, supra, 463 Mass. 379–80, 392, in which the court upheld the admission of a criminal defendant's Internet searches about strangulation as probative evidence of his intent in a sexual assault and attempted murder case, in support of his argument that the victim's repeated Internet searches for weapons, made within the week before the fatal altercation and after their fights, " 'corroborat[e] and validat[e]' " the legitimacy of the victim's threat to the defendant, along with the defendant's fear of the victim. The defendant also contends that the trial court abused its discretion in declining to admit evidence of the searches as evidence of prior misconduct under § 4-5 (c) of the Connecticut Code of Evidence. The defendant argues that the timing and voluminous nature of the searches establish the victim's intent to arm and prepare himself for a confrontation with the defendant. The defendant further contends that these improper evidentiary rulings require reversal because they substantially swayed the jury's verdict.

In response, the state contends that the trial court properly exercised its discretion to exclude the evidence because the victim's Internet searches were not admissible evidence of his violent character for either of the two purposes permitted by § 4-4 (a) (2) of the Connecticut Code of Evidence, namely, to establish (1) the defendant's state of mind or apprehensions about the victim's violent character, or (2) that the victim was the initial aggressor. Specifically, the state contends that the evidence was not admissible for the first purpose because the defendant was not aware of the searches at the time of the altercation, which renders *Commonwealth* v. *Carey*, supra, 463 Mass. 378, distinguishable, and it was not admissible for the second purpose because our precedent allows only the admission of specific violent acts that result in criminal convictions. See, e.g., *State* v. *Osimanti*, 299 Conn. 1, 14, 6 A.3d 790 (2010). Citing *State* v. *Byrd*, 136 Conn. App. 391, 397, 44 A.3d 897, cert. denied, 306 Conn. 906, 52 A.3d 732 (2012), which held that a conviction for criminal possession of a firearm was not a crime of violence admissible to show a murder victim's violent character, the state posits, "a fortiori, that a mere search for weapons on eBay could not have had any meaningful bearing on the victim's state of mind at the time of the fatal altercation, let alone the reasonableness of the defendant's fear of the victim when the defendant, who was ignorant of the victim's Internet activity, approached him." (Emphasis omitted.) The state also argues that, even if the evidence were relevant, including as uncharged misconduct under § 4-5 (c) of the Connecticut Code of Evidence, the trial court reasonably deter-

mined that any probative value was outweighed by the danger of unfair prejudice. We agree with the state and conclude that the trial court did not abuse its discretion in declining to admit evidence of the victim's Internet searches for weapons.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . Evidence is relevant if it tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence. . . . The trial court has wide discretion to determine the relevancy of evidence and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Best*, 337 Conn. 312, 317–18, 253 A.3d 458 (2020); see Conn. Code Evid. § 4-1. This discretion extends to the trial court's application of §§ 4-4 and 4-5 of the Connecticut Code of Evidence. See, e.g., *State* v. *Jordan*, 329 Conn. 272, 279–80, 186 A.3d 1 (2018); *State* v. *Osimanti*, supra, 299 Conn. 13; see also *State* v. *Saucier*, 283 Conn. 207, 218–20, 926 A.2d 633 (2007) (considering function of trial court's discretion and contrasting standards of review applicable to interpreting and applying Code of Evidence).

We begin with the defendant's reliance on the Massachusetts' Supreme Judicial Court's decision in *Commonwealth* v. *Carey*, supra, 463 Mass. 378, in support of his argument that the trial court improperly cabined its analysis to the strictures of § 4-4 (a) of the Connecticut Code of Evidence as they pertain to proving a victim's violent character, rather than focusing on the relevance of the Internet search histories to proving the victim's state of mind at the time of the fatal altercation. In *Carey*, the Massachusetts court held that, despite "scant evidence establishing a temporal connection between the defendant's consumption of these materials and the incident at issue," photographs and videos of strangulations, as well as search histories of strangulation murders, found on the defendant's computer were "highly probative of his intent and motive, as well as the victim's alleged consent" in an attempted murder case in which the defendant's specific intent to kill was "the principal issue at trial" when he "alleged that he . . . strangled the victim [only] as a means toward sexual gratification and without any intent to do her harm."[10] Id., 388. The defendant contends that the search history evidence at issue in this case is even more probative than that in *Carey*, given its temporal relationship to the altercations at issue. We disagree.

The defendant's reliance on *Carey* is an attempt to thread the eye of a needle created by well established principles of Connecticut case law, particularly our leading decision in *State* v. *Miranda*, supra, 176 Conn. 109–11, which are now embodied in § 4-4 (a) (2) and

(b) of the Connecticut Code of Evidence. "In a homicide or criminal assault case, an accused may introduce evidence of the violent, dangerous or turbulent character of the victim to show that the accused had reason to fear serious harm, after laying a proper foundation by adducing evidence that he acted in self-defense and that he was aware of the victim's violent character.[11] . . . [W]e joined a majority of courts when we expanded this rule to allow the accused to introduce evidence of the victim's violent character to prove that the victim was the aggressor, regardless of whether such character evidence had been communicated to the accused prior to the homicide. . . . In *Miranda*, we determined that the victim's violent character could be proved by reputation testimony, by opinion testimony, or by evidence of the [victim's] convictions for crimes of violence, irrespective of whether the accused knew of the [victim's] violent character or of the particular evidence adduced at the time of the death-dealing encounter. . . . This court has not, however, departed from [its] precedent that specific violent acts not resulting in a criminal conviction may not be introduced to prove the victim's violent character. . . . This is because the admission of such evidence, other than convictions, has the potential to surprise, to arouse prejudice, to multiply the issues and confuse the jury, and to prolong the trial."[12] (Citations omitted; footnote added; footnotes omitted; internal quotation marks omitted.) *State* v. *Osimanti*, supra, 299 Conn. 13–14; see *State* v. *Jordan*, supra, 329 Conn. 283 (trial court has discretion to admit convictions arising from "a subsequent act that is close in time and highly similar to the charged incident" to prove that victim was initial aggressor but not to prove defendant's state of mind); *State* v. *Whitford*, supra, 260 Conn. 636–40 (trial court properly declined to admit testimony that victim, when intoxicated, had attempted to strangle two people but properly admitted reputation testimony that victim was violent person when intoxicated); *State* v. *Carter*, 228 Conn. 412, 425–26, 636 A.2d 821 (1994) (trial court abused its discretion in not permitting defendant to reopen evidence to introduce evidence that victim had assault and narcotics trafficking convictions "close in time to the deadly encounter between the victim and the defendant" because they "would have provided objective corroboration of the defendant's claim that the victim was a person of violent character who had acted as the initial aggressor"); *State* v. *Smith*, 222 Conn. 1, 19–20, 608 A.2d 63 (The trial court properly declined to admit evidence of the information or arrest warrant charging the deceased victim with assault because "[a] conviction is indisputable evidence of the commission of a violent crime. On the contrary, a charging document is a mere accusation, not a settled disposition, and, as such, would invite dispute over collateral issues at trial."), cert. denied, 506 U.S. 942, 113 S. Ct. 383, 121 L. Ed. 2d 293 (1992); *State* v. *Collins*, 68 Conn.

App. 828, 838, 793 A.2d 1160 ("in the case of self-defense, eyewitness testimony of prior specific acts of violence perpetrated on a defendant by his or her victim is admissible to show the state of mind of the defendant at the time of the killing"), cert. denied, 260 Conn. 941, 835 A.2d 58 (2002); *State* v. *Carter*, 48 Conn. App. 755, 762–64, 713 A.2d 255 (trial court properly precluded defendant's mother from testifying about whether she had seen victim selling drugs outside her home or with weapon, while permitting defendant to testify about violent acts that victim had committed against him personally but not against others), cert. denied, 247 Conn. 901, 719 A.2d 905 (1998); *State* v. *Knighton*, 7 Conn. App. 223, 228–29, 508 A.2d 772 (1986) (following *Miranda* and concluding that police officer or defendant could not testify about specific acts of violence allegedly committed by victim "to show the victim's propensity for violence, and [the defendant's] own testimony should have been admitted to show his state of mind when he confronted [the victim]").

"[N]otwithstanding this general rule of admissibility," under § 4-4 (b) of the Connecticut Code of Evidence, "we have held that the defendant is not authorized to introduce any and all convictions of crimes involving violence, no matter how petty, how remote in time, or how dissimilar in their nature to the facts of the alleged aggression. In each case the probative value of the evidence of certain convictions rests in the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *Osimanti*, supra, 299 Conn. 15; see *State* v. *Byrd*, supra, 136 Conn. App. 397 (trial court did not abuse its discretion in excluding evidence of victim's conviction for criminal possession of firearm because it showed that "the victim possessed the gun solely as collateral [for a loan of money] and . . . did not intend to use the gun in a violent manner").

Although the defendant contends that he did not offer the Internet search evidence to establish the victim's character pursuant to § 4-4 of the Connecticut Code of Evidence, the case law embodied in that provision nevertheless continues to inform the extent to which that evidence is admissible under the more general principles of relevance relied on by the defendant. These cases reflect a "narrow" exception to the rule followed by the "vast majority" of jurisdictions and the Federal Rules of Evidence, which "prohibit the use of specific acts to prove character in this context. . . . Courts have cited the same concerns about inquiry into potentially confusing collateral matters . . . unfair surprise to the party against whom the evidence is offered . . . and prejudice to the prosecution if the deceased is shown to have been a detestable person . . . ." (Citations omitted.) *State* v. *Smith*, supra, 222 Conn. 18–19. This is particularly so given that the Connecticut Code of Evidence is, in essence, a codification of the common-law standards that "was not intended to displace,

supplant or supersede common-law evidentiary rules or their development via common-law adjudication . . . ." *State* v. *DeJesus*, 288 Conn. 418, 455, 953 A.2d 45 (2008); see T. Bishop, "Evidence Rulemaking: Balancing the Separation of Powers," 43 Conn. L. Rev. 265, 298–301 (2010). Put differently, the overall relevance determination remains the same, regardless of a party's claim that it is not attempting to shoehorn evidence into or beyond the strictures of a particular rule of evidence, such as the restrictions embodied in § 4-4 (b) of the Connecticut Code of Evidence. Cf. *State* v. *Whitford*, supra, 260 Conn. 640 (rejecting argument that would admit victim's prior bad acts under § 4-5 (c) of Connecticut Code of Evidence in manner that would "nullify" or evade "limitation" of § 4-4 (b), which "reflects a conscious choice by the code's drafters to exclude specific acts evidence as permissible proof, consonant with [Connecticut] case law").

Accordingly, we agree with the trial court's determination in the present case that the defendant's lack of awareness of the victim's Internet searches for weapons rendered them irrelevant for purposes of establishing the defendant's state of mind during the encounter. This is because the well established subjective-objective standard that governs self-defense involving the use of deadly physical force under § 53a-19 (a) requires the jury to consider the reasonableness of the force used while "view[ing] the situation from the perspective of the defendant." (Internal quotation marks omitted.) *State* v. *O'Bryan*, supra, 318 Conn. 632; see footnote 6 of this opinion. The searches are rendered even less relevant, given that the defendant does not claim that they, in and of themselves, amounted to a crime of violence for purposes of § 4-4 (a).

The defendant argues further that the Internet searches constituted a prior act of misconduct relevant to establish the victim's state of mind under § 4-5 (c)[13] of the Connecticut Code of Evidence.[14] We disagree. Even if we assume, without deciding, that the victim's otherwise legal Internet searches were themselves evidence of prior misconduct admissible to prove his state of mind pursuant to § 4-5 (c), this court's decision in *State* v. *Whitford*, supra, 260 Conn. 610, squarely forecloses the defendant's efforts to use prior misconduct evidence under § 4-5 (c) to evade the strictures of § 4-4 and the well established case law that it embodies. In *Whitford*, the defendant invoked § 4-5 (c) and "sought to introduce the testimony of three witnesses that the victim, when drunk, had violently attacked and attempted to strangle them" in support of his claim of self-defense, as "relevant to his assertion that the victim was the aggressor in their altercation because it would tend to prove both the victim's character for violence and his specific habit of strangling people while he was intoxicated." Id., 635. The trial court declined to admit evidence of the specific acts and limited the testimony to

only "knowledge and opinion of the victim's violent character." Id. After reviewing the body of case law governing the admission of evidence of victims' violent acts in self-defense cases; see id., 636–37; this court concluded in *Whitford* that the "defendant's assertion that the proffered testimony was admissible pursuant to § 4-5 (c) . . . fail[ed] because it effectively would read § 4-4 (b) out of the code. . . . [Section] 4-4 (b) specifically limits the methods of proving the victim's character in a homicide or criminal assault prosecution to reputation or opinion testimony, or evidence of prior convictions for violent crimes. This limitation reflects a conscious choice by the code's drafters to exclude specific acts evidence as permissible proof, consonant with our case law. Were we to adopt the defendant's argument and read § 4-5 (c) to permit what § 4-4 (b) forbids, we would nullify this intentional exclusion of specific acts evidence . . . ."[15] Id., 640. The court emphasized in *Whitford* that § 4-4 embodies our case law on this point, notably *State* v. *Miranda*, supra, 176 Conn. 107. See *State* v. *Whitford*, supra, 638–39. Accordingly, the court determined that, "[b]ecause § 4-4 of the code explicitly provides for the admissibility of evidence concerning the victim's violent character under certain specified circumstances, it trumps the more general rules set forth in § 4-5 regarding the admissibility of specific acts. Thus, § 4-5 (c) does not apply to evidence of the victim's violent character in homicide or criminal assault cases, which is specifically covered by § 4-4, but rather applies to evidence admitted to prove the issues enumerated in § 4-5 (b)." Id., 641; see id., 642–43 (rejecting defendant's claim that specific acts preclusion does not apply to habit evidence offered pursuant to § 4-6 of Connecticut Code of Evidence). We therefore conclude that the trial court did not abuse its discretion in declining to admit into evidence the victim's Internet searches for weapons.

The judgment is affirmed.

In this opinion the other justices concurred.

* October 22, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The defendant appeals directly to this court pursuant to General Statutes § 51-199 (b) (3).

[2] Section 4-5 of the Connecticut Code of Evidence provides in relevant part: "(a) General rule. Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character, propensity, or criminal tendencies of that person except as provided in subsection (b).

* * *

"(c) When evidence of other crimes, wrongs or acts is admissible. Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony. . . ."

[3] At trial, the state's theory of the case was that the defendant had "a bruised ego" from losing the fights earlier in the week that had led him to "attack" the victim.

[4] The defendant argued that, although he had not been aware of the victim's Internet search for weapons, the evidence could be "highly relevant in helping the jury to determine whether the defendant's story of self-defense

[was] truthful. The jury's knowledge that [the victim] was conducting searches for various types of weapons adds significant credence to the claim that his escalating and focused hostility toward the defendant culminated in his aggressive conduct on [October 7, 2017]." The defendant also argued that, not only was the search evidence relevant to the victim's intent and state of mind, but it would also corroborate the testimony of a defense witness, who was anticipated to—and did—reveal that the victim had threatened to kill the defendant.

[5] Section 4-4 of the Connecticut Code of Evidence provides in relevant part: "(a) Character evidence generally. Evidence of a trait of character of a person is inadmissible for the purpose of proving that the person acted in conformity with the character trait on a particular occasion, except that the following is admissible:

* * *

"(2) Character of the victim in a homicide or criminal assault case. Evidence offered by an accused in a homicide or criminal assault case, after laying a foundation that the accused acted in self-defense, of the violent character of the victim to prove that the victim was the aggressor, or by the prosecution to rebut such evidence introduced by the accused.

* * *

"(b) Methods of proof. In all cases in which evidence of a trait of character of a person is admissible to prove that the person acted in conformity with the character trait, proof may be made by testimony as to reputation or in the form of an opinion. *In cases in which the accused in a homicide or criminal assault case may introduce evidence of the violent character of the victim, the victim's character may also be proved by evidence of the victim's conviction of a crime of violence.*

"(c) Specific instances of conduct on cross-examination of a character witness. A character witness may be asked, in good faith, on cross-examination about specific instances of conduct relevant to the trait of character to which the witness testified to test the basis of the witness' opinion." (Emphasis added.)

[6] When a defendant raises a claim of self-defense, § 53a-19 (a) requires the state to disprove beyond a reasonable doubt that the defendant "reasonably believes both that (1) his attacker is using or about to use deadly physical force against him, or is inflicting or about to inflict great bodily harm, and (2) that deadly physical force is necessary to repel such attack. . . . We repeatedly have indicated that the test a jury must apply in analyzing the second requirement, i.e., that the defendant reasonably believed that deadly force, as opposed to some lesser degree of force, was necessary to repel the victim's alleged attack, is a subjective-objective one. The jury must view the situation from the perspective of the defendant. Section 53a-19 (a) requires, however, that the defendant's belief ultimately must be found to be reasonable." (Internal quotation marks omitted.) *State* v. *O'Bryan*, 318 Conn. 621, 632, 123 A.3d 398 (2015).

[7] Citing the Appellate Court's decision in *State* v. *Byrd*, 136 Conn. App. 391, 397, 44 A.3d 897, cert. denied, 306 Conn. 906, 52 A.3d 732 (2012), which held that a victim's conviction of criminal possession of a firearm by itself is not a crime of violence, the trial court further stated: "It's hard to say, under these circumstances, [that] a search on eBay, [which is] not even a conviction, would be relevant to the [victim's] state of mind when the defendant was not even aware of it."

[8] The trial court subsequently denied the defendant's motion to reconsider the denial of the motion in limine.

[9] We note the trial court, *Clifford, J.*, accepted the defendant's guilty plea to part B of the information. All other references in this opinion to the trial court are to Judge Vitale, who presided over the defendant's trial and sentencing, and made the evidentiary ruling at issue in this appeal.

[10] Our research has revealed other decisions, consistent with *Carey*, holding that Internet search histories may furnish relevant circumstantial evidence of an actor's state of mind. See, e.g., *Commonwealth* v. *Keown*, 478 Mass. 232, 245–47, 84 N.E.3d 820 (2017) (concluding that trial court properly admitted searches on defendant's computer for information about poison and antifreeze, as well as victim's Internet history, including research about her kidney illness and doll-making hobby and her e-mails to friends and acquaintances, to show her "positive outlook" on her health in week prior her final hospitalization, as relevant to disprove defendant's theory at murder trial that victim had committed suicide), cert. denied, U.S. , 138 S. Ct. 1038, 200 L. Ed. 2d 292 (2018); *Julio Garcia* v. *State*, 300 So. 3d 945, 974 (Miss. 2020) (Internet searches on defendant's video game console for

sexually explicit and violent phrases, some of which pertained to young females, conducted "just days" before sexual battery and murder of young child were relevant to show motive, opportunity, or intent and were not unduly prejudicial in case involving sexual battery and murder of young child), cert. denied,      U.S.     , 141 S. Ct. 2706, 210 L. Ed. 2d 874 (2021).

[11] Case law from other jurisdictions highlights that the key to the introduction of evidence of the specific bad acts of a victim in a self-defense case is the defendant's knowledge of those acts. See, e.g., *Richardson* v. *United States*, 98 A.3d 178, 187–89 (D.C. 2014) (trial court improperly excluded evidence of defendant's belief that drug dealer victim knew that defendant had talked to police, which resulted in raid of victim's apartment, because evidence was relevant to claim of self-defense and to prove that victim was first aggressor); *State* v. *Williams*, 303 Kan. 585, 595, 363 P.3d 1101 (2016) (evidence that victim had attempted to rape woman was not relevant to defendant's claim at murder trial that he killed victim in defense of his wife because there was no evidence that defendant knew of that attempted rape, meaning "the record lack[ed] any evidence establishing a nexus between the alleged prior bad act of the victim . . . and the defendant's state of mind at the time the defendant claims to have acted in self-defense or defense of another").

[12] In *Miranda*, this court rejected the approach taken in its earlier decision in *State* v. *Padula*, 106 Conn. 454, 138 A. 456 (1927), which did not permit the admission of character evidence to prove that the decedent was the aggressor on the ground that "the result of an unlimited application of such a rule would be to interject the character of the deceased with the resulting temptation 'to measure the guilt of the accused by the deserts of the victim' into all such cases." Id., 459; see *State* v. *Miranda*, supra, 176 Conn. 110. While acknowledging in *Miranda* that "[t]here is always the risk that the jury may be unduly diverted and confused by collateral matters such as character," the court observed that "the sound discretion of the court is relied [on] to focus the jury's attention on the material issues in the trial." *State* v. *Miranda*, supra, 110–11.

[13] "We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions [set forth in § 4-5 (c) of the Connecticut Code of Evidence]. . . . Second, the probative value of the evidence must outweigh its prejudicial effect. . . . Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only whe[n] abuse of discretion is manifest or whe[n] an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling. . . .

"In determining whether the prejudicial effect of otherwise relevant evidence outweighs its probative value, we consider whether: (1) . . . the facts offered may unduly arouse the [jurors'] emotions, hostility or sympathy, (2) . . . the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) . . . the evidence offered and the counterproof will consume an undue amount of time, and (4) . . . the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Citation omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Raynor*, 337 Conn. 527, 562, 254 A.3d 874 (2020); see footnote 2 of this opinion (text of § 4-5 of Connecticut Code of Evidence).

[14] The state argues that the defendant did not preserve his claim that the victim's Internet searches were not acts of prior misconduct relevant to prove the victim's state of mind for purposes of § 4-5 of the Connecticut Code of Evidence. In response, the defendant contends in his reply brief that he properly preserved his uncharged misconduct claim, despite the lack of an "express" citation to § 4-5 (a) in his motion in limine, given his citations therein to common-law uncharged misconduct case law, such as *State* v. *Mooney*, 218 Conn. 85, 126–27, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991). The defendant emphasizes that the record demonstrates that the prosecutor, in responding to the motion, understood that the defendant was advancing a claim that the searches were admissible as uncharged misconduct, rather than "pigeonholing" it as a character claim under § 4-4.

Although the defendant did not specifically cite § 4-5 of the Connecticut Code of Evidence before the trial court, our review of the record indicates that the defendant's arguments repeatedly emphasized the use of the searches to prove the victim's state of mind in juxtaposition with the limita-

tions imposed by existing case law reflected in § 4-4. We conclude, therefore, that these arguments "functionally preserved" this uncharged misconduct claim for purposes of appeal, eliminating any concerns that the trial court was not on notice of the argument. *State* v. *Best*, supra, 337 Conn. 317 n.1.

[15] This court also observed in *Whitford* that the defendant's claim that the specific acts evidence was admissible pursuant to § 4-5 (c) of the Connecticut Code of Evidence "ignores that portion of § 1-2 of the code and its commentary . . . [that] indicates that the code was intended only to codify the common law. If, as the defendant suggests, we were to read § 4-5 (c) as permitting introduction of evidence regarding a victim's specific violent acts, we would be interpreting the code in a manner that would effectuate a substantive change in the law. Because such a result would be contrary to the express intention of the code's drafters, we reject it." *State* v. *Whitford*, supra, 260 Conn. 639–40. We note that this limited understanding of this court's authority vis-à-vis the code was later overruled in *State* v. *DeJesus*, supra, 288 Conn. 418, in which we concluded that the Connecticut Code of Evidence "was not intended to displace, supplant or supersede common-law evidentiary rules or their development via common-law adjudication, but, rather, simply was intended to function as a comprehensive and authoritative restatement of evidentiary law for the ease and convenience of the legal community." Id., 455; see id. ("the judges of the Superior Court did not intend for the [Code of Evidence Oversight] [C]ommittee to recommend substantive changes to the common-law evidentiary rules codified in the code, but, rather, intended for the committee simply to recommend revisions reflecting common-law developments in evidentiary law, clarifications of the code to resolve ambiguities and additions to the code in the absence of governing common-law rules"); see also id., 460 ("[T]he evidentiary rules articulated [in the code] are subject to change, modification, alteration or amendment by this court in the exercise of its constitutional and common-law adjudicative authority. To reiterate, we conclude that the code neither is, nor was intended to be, anything more than a concise, authoritative and, as the commentary to § 1-2 (a) of the code describes it, 'readily accessible body of rules to which the legal profession conveniently may refer.' " (Footnote omitted.)).

_____